# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
Case No:_____

| | | |
|---|---|---|
| CUSTOM DYNAMICS LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| NEW RAGE CYCLES and JUSTIN VOGEL, | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiff Custom Dynamics LLC ("Custom Dynamics"), by and through its counsel,

complaining of Defendants New Rage Cycles ("NRC") and Justin Vogel, alleges and says:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the

United States, 35 U.S.C. §§ 271, *et seq*., to enjoin and obtain damages resulting from

Defendant's unauthorized use of systems that infringe one or more claims of United States Patent

No. 8,876,331 ("the '331 Patent"), attached hereto as Exhibit A and entitled "Annular Lighting

Fixture and Method for Illumination," United Sates Patent No. 8,192,061("the '061 Patent"),

attached hereto as Exhibit B and entitled "Annular Lighting Fixture and Method for

Illumination," United States Patent No. D611,187 ("the '187 Patent") attached hereto as Exhibit

C and entitled "Light Fixture," and United States Patent No. D605,345 ("the '345 Patent")

attached hereto as Exhibit D and entitled "Light Fixture."  Custom Dynamics seeks injunctive

relief to prevent NRC from continuing to infringe the '331, '061, '187 and '345 Patents, and, in

addition, seeks a recovery of monetary damages resulting from Defendants' infringement of

the'331, '601, '187 and '345 Patents.

## PARTIES

2.      Custom Dynamics is a North Carolina limited liability company with its principal place of business in Youngsville, North Carolina.

3.      NRC is a New York company. Upon information and belief, NRC's principal place of business is located at 528 Furnace Dock Road, Cortlandt Manor, New York.

4.      Upon information and belief, Justin Vogel is an owner, officer and registered agent of NRC who oversees and is involved in the day to day operations of NRC, to include the actions described herein, and is a resident of Verplanck, New York.

## JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, including 35 U.S.C. §§ 271 *et seq.* This Court has subject matter jurisdiction under the provisions of 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Defendants because Defendants have regularly conducted business in North Carolina and this judicial district, and infringement has occurred and continues to occur in North Carolina and this district. In addition, the Court has personal jurisdiction over Defendants because they have established minimum contacts with the forum and the exercise of the Court's jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), & 1400(b).

## CUSTOM DYNAMICS' LIGHTING PATENTS

8.      Custom Dynamics is a leader in motorcycle lighting. Custom Dynamics markets and sells motorcycle lighting accessories via the Internet and from its showroom in Wake Forest,

North Carolina. Custom Dynamics offers one of the largest selections in the world of light emitting diode (LED) motorcycle accessories for retail and wholesale sales.

9.    As a leader in motorcycle lighting, Custom Dynamics is always looking for high quality lighting accessories to offer its customers.  In addition to inventing its own original, high quality lighting accessories, Custom Dynamics purchases and/or licenses lighting accessory patents to offer its customers the best lighting accessories on the market.

10.    In 2008, Jennifer S. Waring applied for a patent on an annular lighting fixture and method for illumination.  The United States Patent and Trademark Office ("USPTO") granted Patent No. 8,192,061 ("the '061 patent") from that application.

11.    In 2012, Ms. Waring submitted a continuation application, depending from the application that became the '061 patent, for an annular lighting fixture and method for illumination.  The USPTO granted Patent No. 8,873,331 ("the '331 patent") from that application.

12.    In 2008, Ms. Waring submitted a design patent application for a light fixture.  The USPTO granted Design Patent No. D611,187 ("the '187 patent") from that application.

13.    In 2008, Ms. Waring submitted a second design patent application for a light fixture.  The USPTO granted Design Patent No. D605,345 ("the '345 patent") from that application.

14.    The patented products enjoyed commercial success when Ms. Waring introduced to the market through her company.

15.    Custom Dynamics recognized that its customers would be interested in purchasing products that practiced Ms. Warings' invention.  Therefore, in September 2015, Custom Dynamics purchased the rights to those patents.  Custom Dynamics is now the owner of

3

the '061 patent, the '331 patent, the '187 patent, and the '345 patent by way of assignment.

16.     Custom Dynamics makes, markets, and sells products pursuant to the '061 patent, the '331 patent, the '187 patent, and/or the '345 patent.  These products enjoy commercial success in the market.  One example of products covered by these patents and sold by Custom Dynamics are Custom Dynamics' LED Fork Wrap-Arounds<sup>TM</sup>.  Images of these products are shown below:

 

17.     For all times relevant hereto, Custom Dynamics has marked each of these products with the appropriate patent markings, alerting third parties of Custom Dynamics' patent rights.

**DEFENDANT'S INFRINGING ACTS**

18.     In 2013, Justin Vogel launched Defendant NRC.  NRC bills itself as an aftermarket motorcycle parts manufacturer.

19.     One of NRC's products is the Snap-On Front LED Turn Signals.

20.     The Snap-On Front LED Turn Signals, as discussed in detail in the below Counts, reads on at least one claim of each of the '061, 331, 184, and 345 patents.  By making, using, selling, and/or offering the Snap-On Front LED Turn Signals product, Defendants infringe Custom Dynamics' patent rights.

21.     Upon information and belief, Defendants infringement has been and continues to be willful.

**Patent Infringement of '061 Patent**
**35 U.S.C. § 271**

22.     Custom Dynamics realleges the preceding paragraphs.

23.     Custom Dynamics owns the '061 patent. The terms for the '061 patent has not yet expired.

24.     Claim 1 of the '061 patent recites a motorcycle, said motorcycle comprising a tubular portion and a fixture attached about said tubular portion, said fixture comprising:

   a.   an annular housing having a channel along the outside of said housing, wherein the inside of said annular housing is attached about said tubular portion of said motorcycle;

   b.   a plurality of lights disposed in said channel; and

   c.   one or more flexible circuit boards, wherein said plurality of lights comprises light emitting diodes mounted upon said one or more flexible circuit boards and wherein said plurality of lights sweeps at a viewing angle of from not less than 60 degrees to not more than 270 degrees.

25.     NRC, via its Snap-On Front LED Turn Signals product, practices each and every limitation of Claim 1 of the '061 patent. In particular:

   a.   NRC placed or caused to be placed its Snap-On Front Turn Signals on a motorcycle. A photograph taken from NRC's website, showing the Snap-On Front Turn Signals on a motorcycle is shown below:

  

b. As seen in the images, the motorcycles have a tubular portion about which the Snap-On Front Turn Signal Product is attached.

c. The Snap-On Front Turn Signals product comprises an annular housing attached around the tubular portion of the motorcycle. The annular housing has a channel along the outside of the housing and a plurality of lights are disposed in the channel. Images showing these features of the Snap-On Front LED Turn Signals product are shown below:

  

d. The Snap-On Front Turn Signals product includes one or more flexible circuit boards, and where a plurality of lights is comprised of light emitting diodes mounted upon the one or more circuit boards, as shown below.

 

6

The plurality of lights sweeps at a viewing angle of not less than 60 degrees to not more than 270 degrees. To confirm the viewing angle, the places where the lights begin and end were identified in the Snap-On Front LED Turn Signals product. The beginning and ending of the viewing angle are not at the far edges of the product, but each starts inward therefrom, as shown below:

 

The position where the lights began was placed at the 270º position on a protractor (red line shown below) and a blue line was drawn to mark the position where the lights ended. This position was determined to be 60º. A photograph showing these determinations is displayed below:



26.    In addition to infringing claim 1 of the '061 patent, the Snap-On Front LED Turn Signals product further infringes at least claim 2. Claim 2 recites the motorcycle of claim 1,

wherein the fixture comprises a transparent or translucent potion mounted over the plurality of

lights. As shown below, the Snap-On Front LED Turn Signals product includes a transparent

portion mounted over the plurality of lights.



27.     Defendant uses the Snap-On Front LED Turn Signals in an infringing manner

(i.e., by attaching them to the tubular portion of a motorcycle). Defendant directly infringes at

least claims 1 and 2 of the '061 patent.

28.     Defendant further induces its customers to infringe the '061 patent. Defendant

NRC sells the Snap-On Front Turn Signals product, intending for customers to place the product

on their motorcycles. Attached hereto at Exhibit E is an instruction sheet, telling customers to

attach their Snap-On Front Turn Signals to their motorcycles. Further, as shown in the

photographs, the product is designed to fit on a tubular portion of the customers' motorcycles.

Once customers follow these instructions, customers are making and/or using devices that are

claimed by the '061 patent.

29.     NRC is offering the Snap-On Front Turn Signals for sale. By way of example,

NRC offers the Snap-On Front Turn Signals for sale on its website. An image from that website

showing the offer for sale is displayed below:



30.    NRC also offers its products for sale through dealers.  For example, NRC's products are sold through dealers such as Revzilla, Motostarz, Cycle Gear, and Sport Bike Lites. Screen shots showing the infringing Snap-On Front LED Turn Signals product being offered for sale through these dealers are shown below:



Upon information and belief, at least one of these dealers launched a nationwide campaign to sell NRC's infringing products.  A "Sponsored" story on MSN.com advertises "New Rage Cycles

9

Snap-On Fork Mount LED Turn Signals." Clicking on the story image directs users to the Cycle

Gear page, shown above, where users can purchase the infringing NRC product. A copy of the

MSN.com page from September 12, 2016 is shown below:



31.     Upon information and belief, Defendants have successfully sold and continue to

offer to sell and sell the Snap-On Front LED Turn Signals product.

32.     By selling and offering to sell these products to customers and instructing

customers to use the products in an infringing manner, Defendants further induce infringement of

at least claims 1 and 2 of the '061 patent. Defendants know or are willfully blind to the fact that

they are selling products to customers and instructing those customers to use those products to

infringe Custom Dynamics' rights.

33.     NRC's owner, Justin Vogel, is personally involved in and directs NRC's

infringement. For example, Mr. Vogel uses his social media platforms to promote infringing

uses of the Snap-On Front LED Turn Signals product. Indeed, Mr. Vogel induces infringement

in his posts by directing readers to install the NRC Snap-On Front LED Turn Signals product on

motorcycles as claimed in the '061 patent.



34.     Defendants do not have permission from Custom Dynamics to make, use, offer to

sell, or sell any item covered by the '061 patent.

35.     Upon learning Defendants' Snap-On Front LED Turn Signals product infringes

one or more claims of the '061 patents, Custom Dynamics wrote to Defendants and demanded

Defendants immediately cease and desist infringing Custom Dynamics' rights.  To date, despite

Custom Dynamics' demand, Defendants continue to offer to sell Snap-On Front LED Turn

Signals products.

**COUNT II**
**Patent Infringement of '331 Patent**
**35 U.S.C. § 271**

36.     Custom Dynamics' realleges the preceding paragraphs.

37.     Custom Dynamics owns the '331 patent.  The term for the '331 patent has not yet

expired.

38.     Defendants infringe several claims of the '331 patent, to include Claims 1-5, 11-

14, and 17.

39.     Claim 1 of the '331 patent recites an annular lighting fixture comprising an

annular housing comprising a top portion and a bottom portion; a channel defied by said top

portion and said bottom portion; a transparent or translucent portion disposed between said top

portion and said bottom portion in said channel; and a plurality of lights disposed in said

channel.

40.     The Snap-On Front LED Turn Signals product practices each and every limitation

of Claim 1 of the '331 patent.  In particular, the Snap-End Front LED Turn Signals product:

   a.   Is an annular lighting fixture;

   b.   Includes an annular housing comprising a top portion and a bottom portion;

   c.   Includes a channel defined by the top portion and the bottom portion;

   d.   Includes a transparent or translucent portion disposed between the top portion and
        the bottom portion in the channel; and

   e.   Includes a plurality of lights disposed in the channel.

Images showing these features of the Snap-On Front Turn Signals product are shown below:

  

41.     In addition to infringing Claim 1 of the '331 patent, the Snap-On Front Turn

Signals product further infringes at least claims 2-5, and 14.

42.     Claim 2 recites the fixture of claim 1 wherein the plurality of lights sweeps at a

viewing angle of from not less than 60 degrees to not more than 270 degrees.  As discussed in

Paragraph 23(d), the Snap-On Front LED Turn Signals includes this limitation.

43.     Claim 3 recites the fixture of claim 1 wherein the plurality of lights comprises one

or more light emitting diodes (LEDs).  As seen in the image at Paragraph 26, Defendants

advertise their product as comprising LEDs.

44.     Claim 4 recites the fixture of claim 1 wherein the fixture comprises one or more circuit boards and the plurality of lights comprises light emitting diodes mounted on the circuit board(s). As seen in Paragraph 23(d), Defendants' product includes one or more circuit boards with LEDs mounted thereon.

45.     Claim 5 recites the fixture of claim 1, wherein the fixture comprises one or more flexible circuit boards and the plurality of lights comprises light emitting diodes mounted on the flexible circuit board(s). As seen in Paragraph 23(d), Defendants' product includes one or more flexible circuit boards with LEDs mounted thereon.

46.     Claim 14 recites an annular lighting fixture with a vertical axis, annular lighting fixture comprising an annular housing comprising a top portion and a bottom portion; a channel defied by said top portion and said bottom portion; a transparent or translucent portion disposed between said top portion and said bottom portion in said channel; and a plurality of lights disposed in the channel, with the lights having an emitting axis perpendicular to the vertical axis. Paragraph 38 shows the elements of the annular lighting fixture, as it appears in Defendants' product. The photograph below further shows the vertical axis (displayed via a blue pen in the photograph) and the lights with an emitting axis perpendicular to the vertical axis.



47.     As shown in the photographs in Paragraph 23(a) above, Defendants placed or caused to be placed their Snap-On Front Turn Signals on at least one motorcycle having a tubular

portion about which the Snap-On Front Turn Signals product is attached.  Accordingly, the Snap-On Front Turn Signals product further infringes at least claims 11, 12, and 13 of the '331 patent, as these claims correspond to the fixtures of Claims 1, 3, and 5 (respectively) attached to a motorcycle.

48. Claim 17 recites a method for illuminating a vehicle, the method including attaching an annular lighting fixture to a tubular portion of a vehicle, wherein the fixture comprises an annular housing having a top portion and a bottom portion and having a channel defined by the top portion and the bottom portion, a transparent or translucent portion disposed between the top portion and the bottom portion in the channel, and a plurality of lights dispose din the channel.  The method further includes emitting light from the plurality of lights and operating the vehicle to provide energy to the fixture.  As seen in the photographs at Paragraph 23(a), Defendants practice this method.  The Snap-On Front Turn Signals are attached to a tubular part of a vehicle, as shown in these photos.  As explained in Paragraph 38, the structure of the fixture recited by the claim is present in the Snap-On Front LED Turn Signals product.  The photographs at Paragraph 23(a) further show energy provided to the fixture, causing the fixture to emit light.

49. As discussed above, Defendants use these products, and Defendants sell and offer to sell these products to consumers.  Defendants do not have Custom Dynamics' permission to use, offer to sell, or sell these products.

50. Defendants directly infringe the '331 patent claims discussed herein.

51. Further, as discussed above, Defendants intentionally instruct their consumers to install the Snap-On Front LED Turn Signals product onto tubular portions of motorcycles.  Defendants know or are willfully blind to the fact that doing so violates Custom Dynamics'

rights.  As such, Defendants induce infringement of Claims 11, 12, 13, and 17 of the '331 patent.

52.     Although Custom Dynamics informed Defendants that Defendants were

infringing Custom Dynamics' rights in the '331 patent, Defendants knowingly and intentionally

continued their infringing behavior.

## COUNT III
## Patent Infringement of '345 Patent
## 35 U.S.C. § 271

53.     Custom Dynamics realleges the preceding paragraphs.

54.     Custom Dynamics owns the '345 patent.  The term for the '345 patent has not yet

expired

55.     Attached at Exhibit F and incorporated by reference herein is a chart comparing

the design claimed by the '345 patent and Defendants' product.

56.     The Snap-On Front Turn Signals product has the same annular shape, the same

flat solid top and bottom, and the same segmented lights as those shown in the '345 patent.  The

Snap-On Front Turn Signals further places the segmented lights in the same manner as in the

'345 patent design, namely on the sides and front of the design but not on the back of the design.

57.     When viewed in their entireties by an ordinary observer and as shown in Exhibit

F, the design claimed by the '345 patent and the design for the Snap-On Front Turn Signals

product are substantially the same.

58.     Accordingly, the Snap-On Front LED Turn Signals product infringes the '345

patent.

59.     As discussed above, Defendants are making, using, offering for sale, and/or

selling the Snap-on Front LED Turn Signals product.

60.     Defendants do not have Custom Dynamics' permission to make, use, offer for

sale, or sell any product incorporating the patented design protected in the '345 patent.

61.     Although Defendants were informed Defendants' Snap-On Front LED Turn Signals product was infringing Custom Dynamics' rights in the '345 patent, Defendants intentionally and knowingly continued to sell the Snap-On Front LED Turn Signals product.

## COUNT IV
### Patent Infringement of '187 Patent
### 35 U.S.C. § 271

62.     Custom Dynamics realleges the preceding paragraphs.

63.     Custom Dynamics owns the '187 patent.  The term for the '187 patent has not yet expired

64.     Attached at Exhibit G and incorporated by reference herein is a chart comparing the design claimed by the '187 patent and Defendants' product.

65.     The Snap-On Front Turn Signals product has the same annular shape, the same flat solid top and bottom, and the same segmented lights as those shown in the '187 patent.  The Snap-On Front Turn Signals further places the segmented lights in the same manner as in the '345 patent design, namely on the sides and front of the design but not on the back of the design.

66.     When viewed in their entireties by an ordinary observer and as shown in Exhibit G, the design claimed by the '187 patent and the design for the Snap-On Front Turn Signals product are substantially the same.

67.     Accordingly, the Snap-On Front LED Turn Signals product infringes the '345 patent.

68.     As discussed above, Defendants are making, using, offering for sale, and/or selling the Snap-on Front LED Turn Signals product.

69.     Defendants do not have Custom Dynamics' permission to make, use, offer for

sale, or sell any product incorporating the patented design protected in the '345 patent.

70.     Although Defendants were informed Defendants' Snap-On Front LED Turn Signals product was infringing Custom Dynamics' rights in the '345 patent, Defendants intentionally and knowingly continued to sell the Snap-On Front LED Turn Signals product.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Custom Dynamics LLC respectfully prays the Court that:

A.     Pursuant to 35 U.S.C. § 283, enjoin Defendants from making, using, selling, and offering to sell any products that infringe the '061, '331, '345, and/or '187 patents and enjoin Defendants from inducing third parties from making, using, selling, and offering to sell any products that infringe the '061 and '331 patents;

B.     award Plaintiff its damages pursuant to 35 U.S.C. § 284;

C.     find this case exceptional and award reasonable attorney fees to Plaintiff pursuant to 35 U.S.C. § 285;

D.     the costs of this action and prejudgment interests be taxed against Defendants; and

E.     the Court grant Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Custom Dynamics LLC demands a trial by jury be held on all issues so triable.

**Coats & Bennett, PLLC**
**Attorneys for Custom Dynamics LLC**

By:     */s/*_____
        Anthony J. Biller
        NC State Bar No. 24,117
        1400 Crescent Green, Suite 300
        Cary, North Carolina 27518

Telephone: (919) 854-1844
Facsimile:  (919) 854-2084
Email: abiller@coatsandbennett.com